# Exhibit 1

**GENOVA BURNS LLC**
Rajiv D. Parikh (032462005)
Kathleen Barnett Einhorn (040161992)
494 Broad Street
Newark, New Jersey 07102
Tel.: (973) 533-0777
rparikh@genovaburns.com
keinhorn@genovaburns.com

*Attorneys for Plaintiffs Atlas Data Privacy
Corporation, Jane Doe-1, a law
enforcement officer, Jane Doe-2, a law
enforcement officer, Edwin Maldonado,
Scott Maloney, Justyna Maloney, Patrick
Colligan, and Peter Andreyev*

**BOIES SCHILLER FLEXNER LLP**
Mark Mao (*pro hac vice* to be filed)
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com

**MORGAN & MORGAN**
John A. Yanchunis (*pro hac vice* to be filed)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer*, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, and PETER ANDREYEV,<br><br>               Plaintiffs,<br>   v.<br><br>WHITEPAGES INC., RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>               Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION, MERCER COUNTY DOCKET NO.: MER-L-_____-24<br><br>        <u>**CIVIL ACTION**</u><br><br><br>        **COMPLAINT** |

Plaintiffs Atlas Data Privacy Corporation ("Atlas") as the assignee of individuals who are

Covered Persons under Daniel's Law along with Jane Doe-1 (a law enforcement officer), Jane

Doe-2 (a law enforcement officer), Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick

Colligan, and Peter Andreyev (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby submit this Complaint against Defendants and state as follows:

## **INTRODUCTION**

1.      In these tumultuous times, it is critical that the most sensitive personal information of those who serve the public be protected from unwarranted disclosure.  As set forth below, Daniel's Law was passed unanimously by our Legislature to provide judges, law enforcement officers, and prosecutors – and their families – with the right to prevent the disclosure of their home addresses and unpublished home telephone numbers, and to enforce those rights against uncooperative profit-seeking data brokers.

2.      This complaint seeks to protect those important rights, against companies brokering data and choosing profit and personal gain over a critical public interest and the unequivocal mandate of the law.  Companies in the business of disclosing this protected information have avoided accountability for far too long, proffering such information, including home addresses and unpublished home telephone numbers, without sufficient regard for the risks and consequences imposed upon individuals who serve critical judicial and law enforcement roles.

3.      The Legislature and Governor unanimously agree that the basic safety of those who serve – and their families – must be assured.  Here, not only do the data brokers wantonly and repeatedly disregard the law, but they also demonstrate a callousness towards the well-being of those who serve.  Our judges, law enforcement officers and prosecutors should receive the full measure of protection afforded to them under the same laws they enforce for the safety of all citizens.

4.      With this action, Plaintiffs seek to enforce the important rights granted to judges, law enforcement officers, and prosecutors under Daniel's Law.  Consistent with the statutory provisions, Atlas brings this action as an assignee for certain individuals, including many family

2

members of law enforcement officers and prosecutors.  Plaintiffs seek all available injunctive relief and statutory damages, including to prevent any further disclosure by Defendants of information in violation of Daniel's Law.

## BACKGROUND

### Passage of Daniel's Law in New Jersey

5.      In July 2020, Daniel Anderl, the son of a New Jersey federal Judge, was shot dead by a gunman posing as a FedEx delivery man at the front door of the family's New Jersey home. Daniel, who was just age 20 and a rising junior in college, and who aspired to practice law like his parents, took a bullet to his chest trying to protect his parents.  By the time his mother, a Judge, came to the door to check on what happened, the killer was gone.  But her husband was critically wounded, and Daniel tragically died from the gunshot.

6.      During the investigation, the perpetrator was found to have certain political and personal grievances against the Judge, and went to their home that day intending to kill her. Instead, he murdered the Judge's son and almost succeeded in killing her husband as well. Investigators eventually connected this attack with another shooting of an attorney in California, who was similarly mortally gunned down answering the door to his residence to pick up a supposed package from the same disguised gunman.  Authorities concluded that the shooter was disgruntled over certain legal cases with similar political and legal issues to what was pending before Daniel's mother.

7.      Critically, the gunman was able to find the home addresses of both of his murder victims through the various people finder resources available on the internet,[1] the same kind of data broker services at issue in this case.

---

[1] https://www.cbsnews.com/news/esther-salas-son-murder-roy-den-hollander-48-hours/.

**New Jersey Passes Daniel's Law in 2020**

8.     In response to the shooting of Daniel, New Jersey enacted Daniel's Law within a few months, in November 2020 (P.L. 2020, c. 125 *codified in* <u>N.J.S.A.</u> 47:1A-1, et seq. and <u>N.J.S.A</u> 56:8-166.1), which prohibits online data brokers from selling, publishing, and distributing the name and address of current and former judges, law enforcement officers, and prosecutors and their eligible family members (i.e., "covered persons"), upon any written request by the covered person.  Law enforcement personnel are expressly covered by the statute, in full recognition that the public service they provide is no less dangerous or important than those of Judges and prosecutors.

9.     Any such covered person may request that a data broker not "disclose or re-disclose on the Internet or otherwise make available" their home addresses or unpublished home telephone numbers.  Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."  Data brokers must cease disclosure of this protected information within 10 business days of receiving a nondisclosure request from a covered person.

**Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022**

10.     Similar to the actions taken by the State of New Jersey, federal judges such as U.S. Supreme Court Chief Justice John G. Roberts Jr. proposed and supported a federal version of Daniel's Law.  The Chief Justice was quoted stating, "[t]he law requires every judge to swear an

oath to perform his or her work without fear or favor, but we must support judges by ensuring their safety … [a] judicial system cannot and should not live in fear."[2]

11.    The federal bill, which had broad bipartisan support in both the House and Senate, protected judges' personally identifiable information from resale by data brokers.  It allowed federal judges to redact their personal information displayed on federal government internet sites.

12.    The U.S. Senate voted 83-11 to pass the annual defense authorization bill, with the Daniel Anderl Judicial Security and Privacy Act attached,[3] and it was signed by President Biden.[4]

**Violence Against Police Officers and Judges Has Not Stopped**

13.    Judges, law enforcement officers, and prosecutors put their lives on the line every day, which is clearly exhibited by numerous horrific stories of violence beyond the story of the murder of Daniel Anderl.  For example, in 2020, three shooters openly fired upon the Camden home of two New Jersey police officers and their 10-day old infant.  That the officers were constantly involved in the community doing good afforded them no safety from the perpetrators.[5]

14.    More recently, another perpetrator hunted and killed in cold blood a Maryland Judge, after a child custody ruling.[6]  The killing followed that of a Wisconsin Judge in 2022, where the perpetrator killed the retired Judge out of spite for his handling of a criminal case in 2005.[7]

---

[2] https://www.washingtonpost.com/politics/2022/12/31/supreme-court-roberts-leak-report/.
[3] https://www.uscourts.gov/news/2022/12/16/congress-passes-daniel-anderl-judicial-security-and-privacy-act.
[4] https://www.nj.com/politics/2022/12/biden-signs-defense-policy-bill-that-remembers-3-new-jerseyans.html.
[5] Shooters Open Fire On Home Of New Jersey Police Officers In 'Targeted Attack,' Chief Says (forbes.com).
[6] Judge Andrew Wilkinson: Suspect still on the run after killing a judge at his home in a 'targeted attack' following a child custody ruling, sheriff says | CNN.
[7] Former Judge John Roemer was killed in his Wisconsin home in a targeted attack, officials say | CNN.

## **THE PARTIES**

### **The Individual Plaintiffs**

15.    Plaintiff JANE DOE-1, whose name has been anonymized for safety reasons, is a decorated veteran police officer working in Northern New Jersey.  Between 2021 and 2022, Officer Doe-1 participated in a task force that targeted a major criminal organization operating in the state.  Her efforts ultimately led to the arrest and prosecution of a member of the organization's leadership, an individual with an extensive criminal history including threats of violence.  In the subsequent investigation, digital devices recovered from the organization's leadership were analyzed and photographs of Officer Doe-1's personal residence were identified.  Officer Doe-1 lives in the home with her spouse and their young child.  Evidence recovered in the investigation included night-time photography of the young child's bedroom and playroom windows, with the light on while the child was playing inside.  Further investigation revealed that the criminal organization's leadership had hired a private investigator who searched online data broker websites to obtain the officer's home address.  Having identified her home address, text messages confirmed that they had initiated surveillance and were tracking Officer Doe-1's movements to and from her home, immediately prior to the task force initiating arrests.

16.    Plaintiff JANE DOE-2, whose name has been anonymized for safety reasons, is a veteran correctional police officer who lives in Northern New Jersey with her husband and two young children.  Earlier in her career, Officer Doe-2 was the subject of a death threat from a hostile inmate.  The inmate stated that they intended to kill Officer Doe-2, and further implied that they would rely upon a particular private investigator to track down Officer Doe-2's home address to facilitate the murder.  This death threat was investigated and considered credible enough to result in a successful criminal prosecution.  Part of Officer Doe-2's current duties include working in her

correctional facility's law library, where inmates have access to the Internet including online data broker websites and services.  Recently Officer Doe-2 and her coworkers discovered a note left behind by an inmate which included the full name and home address of a young female member of the jail's administrative staff.  The most effective ways to safeguard the security and privacy of their home addresses - for their own safety and that of their family members - is a frequent topic of discussion and concern among the correctional police officers working at Officer Doe-2's facility.

17.     Plaintiff Officer EDWIN MALDONADO joined the Plainfield, New Jersey police department as a patrol officer in 2000.  After a few months on the job, he was assigned to street crimes, where he excelled at field work.  In 2005, he became a Detective with Plainfield's major crimes unit and joined a Federal task force targeting the Mara Salvatrucha-13 (MS-13) gang in New Jersey.  He worked with the task force for the next two years.  During that time period, he received multiple credible death threats from MS-13 members.  Detective Maldonado did not believe he would be able to safeguard his home address while living in Plainfield and relocated his family to a remote location from which he commuted to work.  In 2009, because his relocation effort had been successful and MS-13 could not locate his new home address, gang members targeted Detective Maldonado's mother instead.  They intended to burn down her building with her inside, but set fire to an adjacent building by mistake.  Phone calls between MS-13 members discussing the premeditated murder of Detective Maldonado and his family, and the premeditated murder of Detective Maldonado's mother, were intercepted by jail wiretaps.  Later in multiple criminal trials, evidence was entered into the record regarding these intercepted conversations and premeditated murders, contributing to numerous successful prosecutions.

18.     Plaintiffs Sergeant SCOTT MALONEY ("Sergeant Maloney") and Officer JUSTYNA MALONEY ("Officer Maloney") are husband and wife, both veteran police officers currently serving with the Rahway, New Jersey Police Department.  They live together in New Jersey with their two young children.  In April of 2023, Officer Maloney responded to a routine call of a suspicious individual outside the Motor Vehicle Commission in Rahway.  The individual was an online content creator who often solicits police contact and then films himself debating constitutional rights with the responding officers.  A subset of the content creator's audience is vocally anti-police and videos posted to his social media channel have historically been the source of harassment and intimidation campaigns directed at the officers involved.  In this case, Officer Maloney and several other responding officers were filmed discussing a number of legal issues with the content creator, including whether or not the content creator was required to take his hands out of his pockets to show that he was unarmed.  Overall, the encounter was routine and ended uneventfully.

19.     The resulting video footage was selectively edited and posted to YouTube.  Almost immediately upon the video being posted, Officer Maloney was targeted by followers of the channel and other individuals who viewed the video.  Sergeant Maloney was quickly identified by viewers as Officer Maloney's husband, and became a target himself, due to their relationship as a married couple and his own status as a police officer.  Web links to data broker websites publicly disclosing the Maloney family's home address and unpublished home telephone numbers were posted along with explicit death threats and calls for violence, resulting in dozens of threatening phone calls and text messages.

20.     One of the text messages sent to Sergeant Maloney demanded money and stated that if Sergeant Maloney did not comply then his family would "pay in blood."  The unknown

messenger went on to state that they knew where the Maloneys lived and sent the full name and home address of one of the Maloneys' nearby relatives as proof of the messenger's ability to gather sensitive personal information. Sergeant Maloney refused to comply with any demands. He then received a video of three individuals in ski masks armed with handguns and assault rifles repeating the extortion demand. In part of the video, a masked individual points a rifle at the camera and tells Sergeant Maloney that his family is "going to get [their] heads cut off."

21.     Several weeks later, one of the Maloneys' neighbors observed two suspicious looking individuals in ski masks parked one block away from the home and alerted police. Responding officers arrested two men - who were armed - for unlawful possession of a firearm. Video surveillance captured by nearby houses shows the two men circling the Maloneys' house immediately prior to their arrest. Officer Maloney and her two young children were at home at the time.

22.     Plaintiff Detective PATRICK COLLIGAN is a 32-year veteran of the Franklin Township police department in Somerset, New Jersey. Since 2014, Detective Colligan has served as the President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state. During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service. The seriousness of certain threats necessitated the installation of a surveillance camera system and alarm system, and training for his spouse and children about how to respond in the event of an attack on their home.

23.     Plaintiff Officer PETER ANDREYEV is a 32-year veteran of the Point Pleasant, New Jersey police department. Officer Andreyev currently services as the Executive Vice President of the New Jersey State Policemen's Benevolent Association, representing more than

33,000 active law enforcement officers throughout the state.  During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service.  Officer Andreyev has counseled many other officers who have been the target of violent threats on ways to protect themselves and their family members from harm. whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

### Plaintiff Atlas and its Assignors

24.     Plaintiff ATLAS DATA PRIVACY CORPORATION is a Delaware corporation, with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

25.     As permitted under Daniel's Law, Atlas asserts claims against Defendants as the assignee of the claims of approximately 18,976 individuals who are all "covered persons" under Daniel's Law (together, the "Covered Persons"), including a significant number of individuals who are family members of judges, law enforcement officers, and prosecutors.

26.     The Covered Persons include individuals who reside, work or had previously resided or worked in New Jersey, and qualify as "covered persons" as that term is defined under Daniel's Law, each of whom have claims against Defendants for failing to comply with Daniel's Law.

27.     As set forth in more detail below, the Covered Persons (as well as the Individual Plaintiffs) each exercised their rights under Daniel's Law by sending Defendants a written notice requesting that Defendants cease disclosing or re-disclosing on the Internet or otherwise making available their protected information on one or more of Defendants' websites or through other methods of disclosure.

28.     Defendants have not complied with the law by ceasing the disclosure or re-disclosure on the Internet or the otherwise making available of protected information as required under Daniel's Law for each of the Covered Persons (as well as each of the Individual Plaintiffs) as required by the law.

29.     In accordance with Daniel's Law, each of the Covered Persons has assigned their rights for claims thereunder against Defendants to Atlas.

30.     Atlas provides an online platform, including an email service named AtlasMail, to law enforcement officers, prosecutors, judges, and other covered persons.  Atlas works with and provides access to its platform to members of the New Jersey State Policemen's Benevolent Association, the Metropolitan Transportation Authority Police Benevolent Association, New Jersey PBA Local 105, and the New Jersey State Troopers Fraternal Association, among others. The goal of these unions and associations, since the first passage of Daniel's Law in November 2020, was to increase the safety and well-being of their members and associated households by helping those members to understand and assert the rights provided to them by the law.

31.     Upon signing up for Atlas, a law enforcement officer or other Covered Person is asked a series of questions to collect required personal information and qualify their eligibility as a covered person under Daniel's Law.  Once eligibility is confirmed, they are shown a page explaining how the Atlas platform works:

## How Atlas Works

Daniel's Law allows you to send takedown notices to data brokers requesting that they not disclose or redisclose your home address or phone number. Atlas provides you with tools and services to help make the process more efficient.

1 **We identify** data brokers that may be disclosing your personal information. As of January 2024, our system tracks over 1,000 data brokers who operate in the United States.

2 **You select** the data brokers to whom you want to send takedown notices. We have lists of data brokers that we recommend, in order to make the selection process easier and more efficient. Alternatively, you can select recipients individually.

3 **You review** takedown notice templates. AtlasMail provides you with templates for takedown notice emails.

4 **You send** takedown notices. Your Atlas service includes an AtlasMail email address. You can use this email address to send takedown notices. More information about AtlasMail will be on the next screen.

**Back**  **Next**

32. AtlasMail is an email service operated by Atlas. Upon signing up with Atlas, each law enforcement officer or other Covered Person receives their own AtlasMail account, with a unique inbox address (e.g. john.doe23@atlasmail.com) for their personal use. A description of AtlasMail and more information about how the email service works are provided on a page during the signup process:

12

## How AtlasMail Works

Daniel's Law allows you to send takedown notices to data brokers requesting that they not disclose or redisclose your sensitive personal information.

Atlas has created an email service, called **AtlasMail**, for its members to use for this purpose.

✓  Upon completing this signup process, a new email account will be created for your personal use. It will be:
**john.doe23@atlasmail.com**

✓  You can access this email account from within the Atlas web application.

✓  This email account belongs to you and you can use it however you want, within certain anti-spam and similar limitations imposed by our terms of service.

**Back**                                                            **Next**

33.     Having provided personal information, confirmed their eligibility for Daniel's Law, and progressed through several pages explaining the functions of Atlas as a platform and AtlasMail as an email service, the law enforcement officer or other Covered Person is then presented with a page on which they can review their home addresses and unpublished home telephone numbers, a takedown notice template, and a recommended list of data brokers to send notices to.  On this page the law enforcement officer or other Covered Person can choose whether or not to send takedown notices.  If they choose not to send takedown notices to the recommended list, they can select individual recipients at a later page (as shown in the example copied below).  Here, each of the Individual Plaintiffs and Covered Persons sent Defendants a takedown notice.

13



34.    Any reply or response back from a data broker to the law enforcement officer or other Covered Person is received and displayed in their AtlasMail inbox. AtlasMail is a fully featured email service provider, and its users can reply, forward, or use their AtlasMail account as they would any other email account:





35.     With this lawsuit, Atlas seeks to enforce compliance with Daniel's Law for those

Covered Persons.  This lawsuit seeks to protect their privacy without unnecessarily putting those

individuals in the spotlight.  Atlas will work with the Court and Defendants to implement a

protective order to then provide Defendants with the assignments and other information for each

of the Covered Persons.

**Defendants**

36.     Defendant Whitepages, Inc. is an entity that discloses or re-discloses on the Internet

or otherwise makes available the home addresses and/or unpublished home telephone numbers of

covered persons.

37.     Defendants Richard Roes 1-10 and ABC Companies 1-10 (collectively with the defendants identified above referred to as the "Defendants") are fictitious names of currently unknown individuals/entities that were also involved with the violations described in this Complaint who have not yet been identified in part due to what appears to be intentional efforts by data brokers to conceal the specific entities involved and responsible for the disclosure of data and information, and individuals responsible for Defendants failures to comply with the law.

38.     Defendants offer and engage in the disclosure of data and information through one or more websites or applications, or otherwise in New Jersey, and to businesses and individuals who operate or reside in New Jersey.  Those websites include:

whitepages.com

peoplesearch.com

39.     In accordance with Defendants' business model, visitors, users, or customers may obtain a name and home address and/or a name and unpublished home telephone number (including the name and address and/or unpublished home telephone number of the Individual Plaintiffs and Covered Persons).  The following is a redacted example of the detailed information provided by Defendants,[8] in violation of Daniel's Law:

---

[8] Consistent with the mandate of Daniel's Law and the public policy considerations underpinning Rule 1:38-7, personal information in the search results has been redacted from the exemplar screenshots included herein.







40.     As the screenshot above shows, visitors, users, or customers can not only obtain the protected information of the Individual Plaintiffs and Covered Persons but also the protected information of their family members.

41.     Daniel's Law was passed to protect those who serve from the disclosure of this protected information by such services, which disclose such information of the Individual Plaintiffs and Covered Persons for their own commercial interests, without sufficient regard to the risks and consequences imposed on individuals.

## JURISDICTION AND VENUE

42.     This Court has jurisdiction because the parties reside and/or conduct business in New Jersey, along with the Covered Persons, and the unlawful actions complained of herein occurred in New Jersey.

43.     Venue is proper pursuant to R. 4:3-2, in that Mercer County is the county in which one or more of the parties and/or Covered Persons reside and/or conduct business.  In addition, many of the events giving rise to this action occurred in this County.

## FACTS COMMON TO ALL COUNTS

44.     As set forth above, New Jersey enacted Daniel's Law in November 2020 (P.L. 2020, c. 125 *codified as* N.J.S.A. 47:1A-1, et seq. and N.J.S.A. 56:8-166.1).

45.     Daniel's Law prohibits data brokers from disclosing or re-disclosing on the Internet or otherwise making available the home addresses or unpublished home telephone numbers of covered persons as defined in the law, upon a written request by those individuals.

46.     Upon notification, and no later than 10 business days after receipt, a data broker must not disclose or re-disclose on the Internet or otherwise make available the home addresses or unpublished home telephone numbers of the covered person.

47.     This includes a mandate that within 10 business days of receiving a nondisclosure request, the data broker shall not disclose the protected information of the covered person. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

48.      Daniel's Law was amended in 2023, as P.L. 2023, c. 113.  The amendment was passed unanimously by the Assembly on May 25, 2023, by the Senate on June 20, 2023, and was thereafter signed by the Governor on July 20, 2023.

49.     Certain provisions of the amended law, including changes to N.J.S.A. 56:8-166.1, went into effect immediately.

50.     As of July 20, 2023, Daniel's Law as codified in N.J.S.A. 56:8-166.1 provided:[9]

> 3.a. (1) Upon notification pursuant to paragraph (2) of this subsection, and not later than 10 business days following receipt thereof, a person, business, or association shall not disclose or redisclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person, as defined in subsection d. of this section.
>
> b. A person, business, or association that violates subsection a. of this section shall be liable to the covered person, or the covered person's assignee, who may bring a civil action in the Superior Court.
>
> c. The court shall award:
>
>> (1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;
>>
>> (2) punitive damages upon proof of willful or reckless disregard of the law;
>>
>> (3) reasonable attorney's fees and other litigation costs reasonably incurred; and

---

[9] https://pub.njleg.state.nj.us/Bills/2022/PL23/113_.PDF

(4) any other preliminary and equitable relief as the court determines to be appropriate.

d. For the purposes of this section:

…"Disclose" shall mean to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

51.    Starting on or about December 21, 2023, each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas) sent Defendants written nondisclosure requests (via email) in accordance with Daniel's Law, using AtlasMail.

52.    For example, a true and correct copy of the email directly from Plaintiff Maldonado (with personal information redacted) is pasted here:



### Data Subject Request - Redaction/nondisclosure Request

| To | support@whitepages.com |
| From | Edwin Maldonado <▬▬▬▬@atlasmail.com> |
| Date | Fri, Dec 22, 2023 2:24 AM |

Whitepages
December 22, 2023

To Whom It May Concern:

I am a "Covered Person" as defined by New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act"). Pursuant to the Act and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended), I hereby request that you not disclose or re-disclose on the Internet or otherwise make available, the following protected information:

Name: Edwin Maldonado

Home Address: ▬▬▬▬▬▬▬▬▬▬

Sincerely,
Edwin Maldonado

53.     Defendants failed to cease the disclosure or re-disclosure on the Internet or the otherwise making available of the protected information of the Individuals Plaintiffs and Covered Persons within the time period required by Daniel's Law.

54.     Even as of the date of this filing, Defendants still refuse to comply with Daniel's Law.  Protected information of the Individual Plaintiffs and those Covered Persons who assigned Atlas their Daniel's Law claims against Defendants remains available from Defendants using Defendants' search tools or other means of disclosure.

55.     All of the Covered Persons who sent their nondisclosure requests to Defendants (not including the Individual Plaintiffs) have assigned their claims against Defendants to Atlas.

56.     The Individual Plaintiffs and Atlas hereby assert claims against Defendants based on their violation of Daniel's Law and continuing refusal to comply with that law.

## COUNT ONE

### (Daniel's Law)

57.     The allegations of the Complaint set forth above are included herein as if set forth at length.

58.     The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home address and/or unpublished home telephone number and cease its disclosure or re-disclosure on the Internet or wherever Defendants otherwise made it available.

59.     Defendants had an obligation under Daniel's Law to comply with the request within ten (10) business days.

60.     As of the date of this filing, Defendants still refuse to comply with Daniel's Law. The protected information (including home addresses and/or unpublished home telephone

numbers) of the Individual Plaintiffs and the Covered Persons remains "available or viewable within a searchable list or database" or otherwise made available.

61.     Defendants did not cease the disclosure or re-disclosure on the Internet or the otherwise making available of information as required under Daniel's Law, and their failure in doing so each constitute a separate violation under the law.

62.     As a result of Defendants' failures to comply with Daniel's Law, Plaintiffs have suffered damages, and request all available relief.

63.     As of the date of this filing, Defendants still refuse to comply with Daniel's Law. The protected information of the Individual Plaintiffs and the Covered Persons remains disclosed or otherwise made available despite proper requests for nondisclosure in violation of Daniel's Law. As such, Plaintiffs request that the Court enter all appropriate legal and equitable relief.

WHEREFORE, Plaintiffs request that Judgment be entered against Defendants as follows:

A. Ordering that Defendants immediately comply with Daniel's Law, and cease the disclosure of the Individuals Plaintiffs' and the Covered Persons' names, home addresses, and unpublished home telephone numbers wherever disclosed or re-disclosed on the Internet or otherwise made available;

B. Awarding actual damages, not less than liquidated damages under Daniel's Law, at "$1,000 for each violation";

C. Awarding an additional amount in punitive damages, to be determined by the Court, for "willful noncompliance" as allowed under Daniel's Law;

D. Awarding reasonable attorneys' fees, interest (pre and post judgment) and litigation costs incurred;

E.  Ordering injunctive relief requiring that Defendants comply with Daniel's Law, and remove the Individual Plaintiffs' and the Covered Persons' protected information wherever disclosed;

F.  Entering equitable or other permanent injunctive relief requiring Defendants to comply with Daniel's law, including the appointment of a qualified independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law; and

G.  Awarding such other and further relief against Defendants as the Court deems equitable and just.

Respectfully Submitted,

**GENOVA BURNS LLC**

Dated: February 6, 2024                    By: */s/ Rajiv D. Parikh*

> Rajiv D. Parikh
> Kathleen Barnett Einhorn
> 494 Broad Street
> Newark, New Jersey 07102
> Tel: (973) 533-0777
> *Attorneys for Plaintiffs*
>
> **BOIES SCHILLER FLEXNER LLP**
> Mark C. Mao
> Beko Reblitz-Richardson
> 44 Montgomery St., 41st Floor
> San Francisco, CA 94104
> Tel.: (415) 293-6800
> mmao@bsfllp.com
> brichardson@bsfllp.com
>
> James Lee
> 100 SE 2nd St., 28th Floor
> Miami, FL 33131
> Tel.: (305) 539-8400
> jlee@bsfllp.com

26

Adam Shaw
30 South Pearl Street, 12th Floor
Albany, NY 12207
Tel.: (518) 434-0600
ashaw@bsfllp.com

Melissa Zonne
Samantha Parrish
2029 Century Park East
Suite 1520
Los Angeles, CA 90067
Tel.: (213) 995-5720
mzonne@bsfllp.com
sparrish@bsfllp.com

**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
John A. Yanchunis
Ryan J. McGee
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@ForThePeople.com
rmcgee@ForThePeople.com

(*pro hac vice motions to be filed*)

## DESIGNATION OF TRIAL COUNSEL

The Court is advised that pursuant to New Jersey Court Rules 4:5-1(c) and 4:25-4, Rajiv D. Parikh, Esq. is hereby designated as trial counsel for Plaintiffs in this matter.

**GENOVA BURNS LLC**

Dated: February 6, 2024                     By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh, Esq.

## CERTIFICATION PURSUANT TO RULE 4:5-1

Pursuant to R. 4:5-1, it is hereby stated that the matter in controversy between the parties hereto is not the subject of any other action pending in any other Court or of a pending arbitration proceeding to the best of my knowledge and belief.  Also, to the best of my knowledge and belief, no other action or arbitration proceeding between the parties hereto is contemplated.  Further, other than the parties set forth in this pleading and the previous pleadings, if any, at the present time we know of no other parties that should be joined in the within action.

**GENOVA BURNS LLC**

Dated: February 6, 2024                     By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh, Esq.

## CERTIFICATION PURSUANT TO RULE 1:38-7(b)

Pursuant to Rule 1:38-7(b), it is hereby stated that all confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future.

**GENOVA BURNS LLC**

Dated: February 6, 2024                    By: */s/ Rajiv D. Parikh*_____

Rajiv D. Parikh, Esq.
